UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 7:18-cv-00388 |
| FIRST CLASS ELECTRICAL SERVICES, LLC AND EDINBURG CONSOLIDATED INDEPENDENT SCHOOL DISTRICT | § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST
FIRST CLASS ELECTRICAL SERVICES, LLC**

TO THE HONORABLE COURT:

COMES NOW Plaintiff Mesa Underwriters Specialty Insurance Company ("MUSIC"), and, pursuant to Federal Rule of Civil Procedure 55, respectfully files this Motion for Default Judgment against Defendant First Class Electrical Services, LLC ("First Class"), and shows as follows:

**I.
INTRODUCTION AND FACTUAL BACKGROUND**

This is a suit on insurance policies issued in Hidalgo County, Texas and pursuant to Texas law. MUSIC seeks a determination that it has no obligation to defend or indemnify First Class Electrical Services, LLC ("First Class"), a third-party defendant, for allegations asserted against it by Edinburg Consolidated Independent School District ("ECISD"), a third-party plaintiff, in the lawsuit styled *Enviro-Lite Solutions, LLC, USA Promlite Technology, Inc., First Class Electrical Services, LLC, and E-Con Group, LLC, Plaintiffs & Counter-Defendants, v. Edinburg Consolidated Independent School District, Defendant & Counter-Plaintiff;* Cause No. C-5241-

16-G, pending in the 370th Judicial District Court, Hidalgo County, Texas (the "Underlying Suit"). *See* Edinburg CISD's Fourth Am. Ans., Counterclaims, & Third-Party Pet. (Nov. 16, 2018) ("ECISD Petition") (attached as Ex. A). MUSIC also seeks a determination that it has no duty to pay any judgment rendered in favor of ECSID, which arises out of the Underlying Suit.

MUSIC filed its Original Complaint for Declaratory Judgment on December 12, 2018 (ECF No. 1) against First Class and ECISD. ECISD is a third-party plaintiff in the Underlying Suit and not a party to the policies at issue. It could, however, become a judgment creditor if it prevails and obtains a judgment in the Underlying Suit. Therefore, it was joined in this action.

On December 14, 2018, this Court issued a summons for First Class in this action. *See* Summonses to Def. (Dec. 14, 2018), ECF No. 3. First Class was served via its registered agent, Oscar Huerta, on January 7, 2019. *See* Summons Returned as Executed as to First Class Electrical Services, LLC (Jan. 15, 2019); ECF No. 4. No answer has been filed on behalf of First Class. *See* Aff. of S. Melendi ¶ 5 (Mar. 28, 2019) (attached hereto as Ex. B).

On April 1, 2019, the Clerk of the Court executed an entry of default against First Class, at MUSIC's request, pursuant to Federal Rule of Civil Procedure 55(a), (b)(1). *See* Clerk's Entry of Default Against First Class Electrical Services, LLC (Apr. 1, 2019), ECF No. 13.

## II.
### ANALYSIS AND AUTHORITIES

**A.     Default Judgment Standard**

Default judgment can be rendered against a defendant after that defendant has been served with process and has failed to answer or otherwise appear. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The Fifth Circuit has recognized that a default judgment is a three-step process: first, the movant must establish that the adverse party has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.

1996). Second, the movant must secure a clerk's entry of default against the adverse party. *See* Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co*., 84 F.3d at 141. Once default has been entered by the clerk, a movant may apply for default judgment based on the adverse party's default. Fed. R. Civ. P. 55(b); *N.Y. Life Ins*., 84 F.3d at 141; *see also Haywood v. A Child is Born RTC,* A-12-CA-922-SS, 2014 WL 1400221, at *1 (W.D. Tex. Apr. 9, 2014).

A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. *See Rialto Capital Advisors, LLC v. Lewis*, 1:11-CV-698, 2013 WL 1701590, at *2 (E.D. Tex. Apr. 18, 2013); (citing *Norex Petroleum Ltd v. Access Indus., Inc*., 416 F.3d 146, 150 (2d. Cir. 2005)). "When a party defaults by failing to appear or defend a claim, the Court may enter final judgment without conducting a trial on liability." *J & J Sports Productions, Inc. v. Casita Guanajuato, Inc.*, A-13-CA-824-SS, 2014 WL 1092177, at *1 (W.D. Tex. Mar. 19, 2014). A default judgment against a defendant operates as an admission of the plaintiff's well-pleaded factual allegations. *Jackson v. FIE Corp*., 302 F.3d 515, 524 (5th Cir. 2002).

## B. The First Two Steps in The Default Judgment Process Have Already Been Established

### 1. First Class has Defaulted

To establish it is entitled to default judgment against First Class, MUSIC must first establish that First Class has defaulted. "A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the [Federal Rules of Civil Procedure]." *N.Y. Life*, 84 F.3d at 141.

First Class was served with process in this suit on January 7, 2019 via its registered agent. *See* ECF No. 4. First Class failed to answer or otherwise respond to MUSIC's complaint within 21 days, the time allowed by Federal Rules of Civil Procedure 12*; see also N.Y. Life Ins.,* 84 F.3d at 141. Because MUSIC has shown that First Class has not responded to MUSIC's complaint

within 21 days, MUSIC has established that the defendant has defaulted.

### 2. MUSIC has Secured a Clerk's Entry of Default Against First Class

The second step in securing a default judgment against First Class, the clerk's entry of default, has been completed. MUSIC filed a Request for Clerk's Entry of Default against First Class on March 28, 2019. *See* Pl. Req. for Clerk's Entry of Default Against First Class Electrical Services, LLC (Mar. 28, 2019), ECF No. 11. The Clerk recorded an entry of default against First Class on April 1, 2019. *See* Clerk's Entry of Default Against First Class Electrical Services, LLC (Apr. 1, 2019), ECF No. 13.

### C. Third Step: Sufficiency of the Factual Allegations and Supporting Evidence

A defendant's failure to file a responsive pleading or otherwise defend results in the resolution of material issues of fact and establishes its liability for the plaintiff's well-pleaded claims. *Rialto Cap. Advisors, LLC v. Lewis*, 1:11-CV-698, 2013 WL 1701590, at *2 (E.D. Tex. Apr. 18, 2013). In evaluating the merits of a motion for default judgment, the court treats the well-pleaded factual allegations in the complaint as true. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true[.]").

In *GuideOne Ins. Co. v. House of Yahweh*, an insurer filed a complaint for declaratory judgment, seeking a declaration that it had no duty to defend or indemnify parties against claims arising out of the sexual assault of a minor. 828 F. Supp. 2d 859 (N.D. Tex. 2011). The parties failed to answer or respond to the suit, and the clerk entered default. *Id*. at 861. Following the clerk's entry of default against the parties, the insurer sought default judgment on the merits. *Id*.

The court first noted that defendants were in default and there was a clerk's entry of default.

*Id*. Therefore, the only inquiry before the court was whether the insurer's well-pleaded allegations, together with any additional evidence presented by the insurer, was sufficient to support the requested relief: a declaration that the insurer owed no duty to defend and indemnify against the claims of the underlying lawsuit. *Id*.

First, the court examined the underlying petition under Texas's eight-corners rule. *Id*. (citing *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp*., 198 F.3d 548, 551 (5th Cir. 2000)) ("Under Texas law, when deciding whether an insurer owes a duty to defend, courts apply the eight-corners rule."). It compared the allegations in the most recent petition with the policy at issue. *House of Yahweh*, 828 F. Supp. 2d at 861 (citing *Century Sur. Co. v. Hardscape Constr. Specialties, Inc*., 2006 WL 1948063 at *3) (N.D. Tex. July 13, 2006). The court noted that it is "[t]he insured who bears the burden of showing that the claim against it is potentially within the insurance policy's scope of coverage." *House of Yahweh*, 828 F. Supp. 2d at 861 (citing *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001)). However, "[i]f the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer." *House of Yahweh*, 828 F. Supp. 2d at 861.

After an eight-corner analysis, the court in *House of Yahweh* concluded that the insurer had no duty to defend the insureds because only conduct falling outside the scope of the policy's coverage was alleged. *Id*. at 862. The court stated: "Although the allegations in the underlying lawsuit are less than precise, it is evident that the conduct of defendants is alleged to have been intentional." *Id*. Further, even if the allegations were covered, there could be no duty to defend because the policies' intentional acts and sexual abuse exclusions would preclude coverage. *Id*.

**D.     By its Default, First Class has Admitted the Truth of MUSIC's Well-Pled Allegations**

First Class is deemed to have admitted the truth of the well-pled allegations in MUSIC's Complaint. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Specifically, First Class has admitted the following:

1. The underlying lawsuit arose out of the alleged breach of an April 8, 2015 contract between USA Promlite Technology, Inc., by and through Enviro-Lite Solutions, LLC its authorized agent, and ECISD, for replacement of the existing lighting with LED light technology at six ECISD elementary schools (the "Contract"). Enviro-Lite subcontracted with E-Con Group, LLC, which then subcontracted with First Class to perform the electrical work. The Contract contained a five-year service warranty for repair, replacement and labor. However, any action by ECISD to allow or cause the LED lights to be removed voided the warranty. *See* Compl. for Declaratory J. ¶¶ 4.1 - 4.3 (Dec. 11, 2018), ECF No. 1.

2. Enviro-Lite completed the scope of the contracted work on September 26, 2016. Problems with the LED lights arose. Enviro-Lite and ECISD were unable to resolve the problems pursuant to the warranty. Enviro-Lite filed the underlying lawsuit seeking a declaration of the parties' rights and obligations under the Contract. ECISD then filed a third-party action seeking damages against First Class and other third-party defendants. *Id.* ¶¶ 4.4 – 4.5.

3. According to Edinburg CISD's Fourth Amended Answer, Counterclaims, and Third-Party Petition, the LED lights (also herein referred to as the "equipment") were improperly designed by Enviro-Lite and improperly installed by First Class. ECISD alleges that the equipment used by First Class was not certified for use in the United States, and that it installed the equipment in a way that was non-compliant with the electrical standards and practices of the National Electrical Code, and of the Illumination Engineering Society of North America and, thereby, damaged the schools' lighting systems. *Id.* ¶¶ 4.6 -4.7.

4. ECISD further alleges that in an effort to correct the lighting issues caused by its initial installation, First Class installed dimmer switches. However, it did so in a manner that violated electrical standards and practices, including those of the National Electrical Code, and the National Fire Protection Association (NFPA). ECISD alleges that the faulty installation by First Class caused permanent damage to the schools' lighting systems, led to multiple fires and required rewiring of the schools. ECISD further alleges that First Class installed the equipment knowing that it was in violation of manufacturer guidelines. *Id.* ¶¶ 4.8 – 4.9.

5. ECISD seeks damages against First Class and asserts causes of action for breach of implied warranty of good and workmanlike services; negligence, negligent failure to warn or instruct, negligent failure to recall, negligent misrepresentation and fraud, negligent retention, supervision, and training, negligence per se; product liability; and gross negligence for which it claims entitlement to exemplary damages. None of the claims asserted by ECISD against First Class in the third-party action of the underlying lawsuit are covered by the MUSIC policies. *Id.* ¶¶ 4.10 – 4.11.

6.      MUSIC issued three commercial general liability policies to First Class:

| Policy Number | Policy Period |
|---|---|
| MP0042027000682 | 2/2/2015 – 2/2/2016 |
| MP0042027001743 | 2/2/2016 – 2/2/2017 |
| MP0042027003004 | 2/2/2017 – 2/2/2018 |

The policies were each issued to First Class at its Texas address in Hidalgo County, Texas. MUSIC Commercial General Liability Policies Nos. MP0042027000682, MP0042027001743, & MP0042027003004 (attached as Ex. C-1, C-2, & C-3). The declaration pages describe its business as "Electrical Work." MUSIC seeks judgment that its policies provide no coverage for the third-party claims against First Class in the underlying lawsuit. Compl. for Declaratory J. ¶¶ 5.1 – 5.2.

7.      The general liability coverage states that an "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *Id.* ¶¶ 5.3, 5.9. None of the damages sought against First Class fall within the scope of the policies. *Id.* ¶¶ 5.3, 5.9 – 5.10.

8.      In addition, the general liability coverage is subject to exclusions including those for Expected or Intended Injury (exclusion a.), Damage to Property (exclusions j.(5) and j.(6)), Damage to Your Work (exclusion l.), Damage to Impaired Property or Property Not Physically Injured (exclusion m.), and Recall of Products, Work or Impaired Property (exclusion n.), among others. *Id.* ¶¶ 5.4, 5.9, 5.11 – 5.17.

9.      Furthermore, all economic damages sought by ECISD, including the incurred cost of rewiring the schools, does not constitute "property damage" and, therefore, is not covered under the policies. Similarly, the exemplary damages sought in connection with the alleged gross negligence conduct of First Class is also precluded from coverage as the requisite conduct does not constitute an "occurrence," and/or falls within the terms of exclusion a. *Id.* ¶¶ 5.18 – 5.19.

10.      The Underlying Suit does not allege that there is any "occurrence" or "property damage" as those terms are defined in the policies. First Class' failure to comply with industry standards governing electrical work and lighting installation did not lead to unexpected or accidental damage. Rather, the damage to the schools' lighting systems was the natural and foreseeable result of using non-compliant equipment and faulty installation methods. Such conduct does not constitute an "occurrence." *Id.* ¶ 5.10.

11.      Additionally, even if ECISD's third-party allegations against First Class fall within the scope of the insuring agreement of any of the three MUSIC policies, several exclusions apply to preclude coverage. Exclusion a. precludes coverage for damage that is expected or intended by First Class. ECISD's alleged damage to the

schools' lighting systems and costs of rewiring falls within this exclusion. *Id.* ¶¶ 5.10 – 5.12.

12.     Exclusion j.(5) precludes coverage for damage to real property sustained while First Class was performing operations. It applies to preclude coverage for the damaged lighting systems because First Class worked on the schools' lighting systems as part of the LED light installation, and the claimed damages arose out of that work while performing operations. Exclusion j.(6) applies to preclude coverage for the damage to the schools' lighting systems as it constitutes damage to "that particular part of any property" that must be restored, repaired or replaced because "your work" was incorrectly performed on it. *Id.* ¶¶ 5.13 – 5.14.

13.     Exclusion l. applies to preclude coverage for all damages to First Class' completed work at the schools. Exclusion m. applies to preclude coverage for any loss of use claim related to the damaged lighting systems on which First Class performed work. Exclusion n. applies to preclude damages related to First Class' use of LED bulbs that had been withdrawn from use from the United States. *Id.* ¶¶ 5.15 – 5.17.

**E.     MUSIC's Request for Judgment is Supported by the Evidence**

Applying Texas' eight-corners rule to the policies and the allegations in the underlying complaint, it is clear that MUSIC's well-pleaded allegations are sufficient to establish its request for relief. *See House of Yahweh*, 828 F. Supp. 2d 859 at 861. Under the eight-corners rule, an insurer's duty to defend arises if the insured is sued and the complaint alleges facts that are potentially covered. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.* 939 S.W.2d 139, 141 (Tex.1997). The insurer must compare the four corners of the complaint with the four corners of the insurance policy to determine if the allegations potentially fall within coverage. *Id.* If the pleadings alone do not allege facts within the scope of coverage, the insurer is not legally required to defend. *Id.*

The allegations are considered in light of the insurance policy without regard to their truth or falsity. *See Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). Notably, the court may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that may trigger coverage. *Merchants Fast Motor Lines*, 939 S.W.2d at 141; *GuideOne Elite Ins.*

*Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Only the factual allegations outlined in the operative pleading are considered; the legal theories alleged for recovery and remedies sought are irrelevant. *See, e.g., Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997).

### 1. The Underlying Lawsuit does not Allege an "Occurrence" as Defined by the Policies

In the Underlying Suit, ECISD alleges that First Class engaged in intentional conduct by failing to install the lighting systems in accordance with manufacturer guidelines and accepted standards. Compl. for Declaratory J. ¶¶ 4.6 - 4.9. The allegations in the Underlying Lawsuit do not allege an "occurrence" or "property damage" as defined in the policies:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> \*\*\*
>
> "Property damage" means:
>
> > a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> >
> > b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> \*\*\*

*Id.* ¶ 5.9.

First Class' failure to properly install lighting did not lead to unexpected or accidental damage; in fact, the damage was the natural and foreseeable consequence of a failure to perform as required by manufacturer and industry standards. The allegations of intentional installation of lighting not approved for use in the United States, as well as the installation of dimmer switches

in violation of electrical standards and practices, as well as several safety codes, do not trigger the MUSIC policies' insuring agreement as the failure to meet the definition of "occurrence".

### 2. The Expected or Intended Injury Exclusion (Exclusion a.) Bars Coverage

ECISD asserts in the Underlying Suit that First Class engaged in intentional activity in failing to install lighting on compliance with manufacturer and industry standards. Compl. for Declaratory J. ¶¶ 4.6 - 4.9. Exclusion a. provides that the policies do not apply to:

> a. Expected or Intended Injury
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
>
> * * *

ECISD's allegations of First Class' intentional conduct fall squarely within the Expected or Intended Injury exclusion, thus barring coverage and precluding MUSIC's duty to defend.

### 3. The Damage to Property Exclusions (Exclusions j.(5) and j.(6)) and the Damage to Your Work Exclusion (Exclusion l.) Bar Coverage

ECISD asserts that the faulty lighting work by First Class caused damage to property. Compl. for Declaratory J. ¶¶ 4.2 - 4.9. The policies preclude coverage for the following:

> j. Damage to Property
>
> ***
>
> "Property damage" to:
>
> ***
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> ***
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
>
> ***

Similarly, the policies preclude coverage for the following:

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Because the Underlying Suit alleges property damage to real property on which First Class or its subcontractors worked, as well as damage that must be repaired because of First Class' work, exclusions j.(5), j.(6), and l. preclude coverage.

### 4. The Damage to Impaired Property or Property Not Physically Injured Exclusion (Exclusion m.) Bar Coverage

To the extent ECISD alleges loss of use of any property due to faulty work by First Class, the policies exclude coverage for the following:

m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Because the Underlying Suit asserts damage to impaired property as outlined in the exclusion, the policies bar coverage and MUSIC has no duty to defend First Class.

### 5. The Recall Of Products, Work Or Impaired Property Exclusion (Exclusion n.) Bars Coverage

To the extent ECISD alleges damages or loss of use related to improperly manufactured and/or recalled lighting products installed by First Class, the policies exclude coverage as follows:

n. Recall Of Products, Work Or Impaired Property

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1)  "Your product";
> (2)  "Your work"; or
> (3)  "Impaired property"
>
> If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Because the Underlying Suit asserts damage caused by improperly designed or manufactured lighting as outlined in the exclusion, the policies bar coverage and MUSIC has no duty to defend First Class.

## F.   MUSIC Has No Duty to Indemnify First Class for the Underlying Lawsuit

Where an insurer has no duty to defend an insured, the duty to indemnify is justiciable because the insurer could "prov[e] that coverage [was] impossible in the underlying case." *House of Yahweh*, 828 F. Supp. 2d at 863 (citing *Farmers Texas Cnty Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curiam)).  In *House of Yahweh*, the court found that the insurer had no duty to indemnify the insured based on the same reasoning applied to examine the duty to defend.  828 F. Supp. 2d at 863.  The same logic applies here:  "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Griffin*, 955 S.W.2d at 84 (emphasis in original).

MUSIC has no duty to indemnify First Class because the allegations outlined by ECISD in the Underlying Suit do not constitute an "occurrence" under the polices.  *See supra* § E.1.  Furthermore, the allegations fall within the scope of exclusions a., b., j.(5), j.(6), l., m., and/or n.  *See supra* § E.2 – E.5.  There are no facts that would transform First Class' faulty work and

intentionally improper installation of lighting into damage for which the policies would provide coverage. Thus, for the same reasons that there is no duty to defend, there can be no duty to indemnify. Accordingly, the issue of indemnity is justiciable, and MUSIC has no duty to indemnify First Class for the Underlying Suit.

### III.
#### CONCLUSION

MUSIC has shown that First Class was served with process and failed to answer or otherwise appear within 21 days, and that a clerk's entry of default has already been taken against the defendant. MUSIC has further shown that as a matter of law, the Underlying Suit does not state an "occurrence" constituting "property damage" under the policies; furthermore, the Expected or Intended Injury Exclusion, Contractual Liability Exclusion, Damage to Property Exclusions, Damage to Your Work Exclusion, Damage to Impaired Property or Property Not Physically Injured Exclusion, and Recall of Products, Work or Impaired Property preclude coverage for the Underlying Suit. Therefore, MUSIC has no duty to defend and/or indemnify First Class against these claims.

**WHEREFORE, PREMISES CONSIDERED**, Mesa Underwriters Specialty Insurance Company prays that the Court grant its motion for default judgment against Defendant First Class Electrical Services, LLC, enter judgment that MUSIC has no duty to defend or indemnify Defendant First Class Electrical Services, LLC against the claims raised in the Underlying Lawsuit, and for such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

*/s/ Stephen A. Melendi*
Stephen A. Melendi – Attorney-in-charge
State Bar No. 24041468
S.D. Tex. Bar No. 38607
stephenm@tbmmlaw.com
Kirsten Soto
State Bar No. 24090411
S.D. Tex. Bar No. 3036383
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone:    214-665-0100
Facsimile:    214-665-0199

**ATTORNEYS FOR PLAINTIFF MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2019, a true copy of the foregoing was served on all counsel of record via the Court's CM/ECF system pursuant to the Federal Rules of Civil Procedure:

> David J. Campbell
> State Bar No. 24057033
> Email: dcampbell@808west.com
> Kevin O'Hanlon
> State Bar No. 15235500
> Email: kohanlon@808west.com
> O'HANLON, DEMERATH & CASTILLO
> 808 West Avenue
> Austin, Texas 78701
> (512) 494-9949
> (512) 494-9919 (fax)
> **COUNSEL FOR EDINBURG CONSOLIDATED INDEPENDENT SCHOOL DISTRICT**

I hereby further certify that on April 23, 2019, in accordance with Local Rule 5.5 of the United States District Court for the Southern District of Texas, a true copy of the foregoing was sent to the registered agent for First Class Electrical Services, LLC via <u>Certified Mail, Return Receipt Requested</u>:

> First Class Electrical Services, LLC
> c/o Oscar Huerta, registered agent
> 2002 Obra Dorado
> Mission, TX  78572
> **DEFENDANT**

>> */s/ Stephen A. Melendi*
>> Stephen A. Melendi